**UNITED STATES of America, Appellee,**

v.

**Avtar SINGH, Defendant–Appellant.**

**Docket No. 04–3324–CR.**

United States Court of Appeals, Second Circuit.

Submitted March 7, 2005.

Decided July 19, 2005.

---

James E. Long, Law Office of James E. Long, Albany, New York, for Defendant–Appellant.

Robert P. Storch, Assistant United States Attorney, Albany, New York (Glenn T. Suddaby, United States Attorney, Edward P. Grogan, Assistant United States Attorney, Northern District of New York, Albany, New York, of counsel), for Appellee.

Before: WALKER, Chief Judge, CARDAMONE, and JACOBS, Circuit Judges.

CARDAMONE, Circuit Judge.

While driving in a remote area of northern New York State near the Canadian border, defendant Avtar Singh (defendant or appellant) was subjected to a roving stop by United States Border Patrol agents. The agents found several illegal aliens in his vehicle, which led to Singh's indictment and conviction for knowingly transporting illegal aliens within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Defendant, contending that the Border Patrol agent lacked reasonable suspicion to stop him, moved before trial to suppress the evidence of the aliens found in his automobile. The United States District Court for the Northern District of New York (McAvoy, J.) denied the motion and defendant was later convicted by a jury. On appeal defendant argues that the district court erred in denying his suppression motion. This appeal, which presents a legal issue not frequently encountered in this Circuit, questions whether the Border Patrol was in possession of sufficient facts to initiate a roving stop of Singh's vehicle. For the reasons that follow, we conclude that it was.

## BACKGROUND

### A. *The Border*

About one-and-a-half miles south of the border separating the Province of Quebec from the State of New York sits Champlain, a small village of under 2,000 people. It is in a heavily wooded area of northeastern New York State. To the east lies Lake Champlain, once the subject of stra-tegic contests between the newly formed United States and the British Empire. The most notable of these contests was the October 11, 1776 Battle of Valcour Island between the colonial navy under General Benedict Arnold and a British squadron under General Sir Guy Carleton. *See* Harrison Bird, *Navies in the Mountains: The Battles on the Waters of Lake Champlain and Lake George, 1609–1814* 196–213 (1962). Nearly 80 miles to the west lies the St. Lawrence River, which flows north for 800 miles from Lake Ontario to the Atlantic Ocean. The St. Lawrence River serves as the boundary between the United States and Canada, until at Cornwall, Ontario, the boundary runs due east as a line on a map. It is that boundary, so close to Champlain, with which we are concerned in this case.

A number of highways and roads are found in the area. Interstate Highway 87 (I–87) runs through Champlain, connecting New York City to the south and Montreal to the north. Two roads intersect I–87 near Champlain and extend west parallel to the border: Perry Mills Road runs east and west one-half mile south of the border, and State Route 11 runs east and west about two miles south of the border. Glass Road runs north to the border and becomes *Chemin Alberton* (Alberton Road) in Quebec. Glass Road and Perry Mills Road intersect two miles west of Champlain at a point one-half mile south of the border. About one mile west of the intersection with Glass Road, Perry Mills Road turns south and intersects with Route 11. *See* diagram below.[1]

1. Diagram for illustrative purposes only. Not drawn to scale.

Chemin Alberton

Canada

United States

Glass Rd

Perry Mills Rd

I-87

Perry Mills Rd

Route 11

* Champlain

### B. *The Roving Stop*

At 8:00 p.m. on October 13, 2003 Border Patrol Agent Bradley Curtis was conducting a roving patrol along Perry Mills Road in a marked Border Patrol vehicle. As he approached the intersection of Perry Mills Road and Glass Road, Agent Curtis observed a black Lincoln Town Car driven by a person who was later identified as defendant Avtar Singh. So far as the agent could discern, the driver was the only person in the vehicle at that time. The car was traveling slowly along Perry Mills Road and Agent Curtis observed its brake lights go on and off three times in rapid succession. The officer ran a computerized check of the car's license plate and found that it was registered to a person named Maljinder Singh from Richmond Hill, New York, in Queens County on Long Island. The registration check also revealed that the car had entered the United States from Canada through the Rouses Point port of entry, near Champlain, a few days before.

As an experienced Border Patrol officer, Agent Curtis recognized that tapping a car's brakes is a common signal used to alert aliens attempting to cross the border illegally that a vehicle is waiting to pick them up. Agent Curtis was also aware that this area was a frequent site of illegal border crossings from Canada into the United States, especially by Indian and Pakistani nationals, and that black Lincoln Town Cars were often used to transport these aliens because of the vehicles' large passenger capacity. Acting on this knowledge, the agent decided to continue surveillance of the Lincoln and enlisted the assistance of another Border Patrol agent, Brian Jefferson.

The two agents observed the Lincoln Town Car turn off Perry Mills Road and head east on Route 11 towards Champlain. They followed it into Champlain and watched while defendant parked· behind a McDonald's restaurant. They could see no passengers in the vehicle, and no one entered or exited the car while it was parked. Shortly after the agents began their surveillance of defendant's vehicle in the parking lot, they received word from their dispatcher that a motion sensor along the border had alerted to a crossing one-quarter mile from the location where Agent Curtis first encountered defendant's car. Agent Curtis knew the motion sensor was in the woods at a distance from Perry Mills Road that would take about 15 minutes to walk.

Defendant left the parking lot 15 minutes later and returned in the direction from which he came. The agents followed as defendant's vehicle headed west on Route 11 and then turned north on Perry Mills Road. The agents established observation posts along Perry Mills Road. Agent Jefferson saw defendant's car pass his position heading east on Perry Mills Road. He waited three minutes before following and quickly encountered defendant's car now heading west. The Lincoln passed Agent Curtis's position shortly after, and he observed at least two passengers in the back seat of the vehicle.

Defendant turned off Perry Mills Road onto Route 11 and again headed east. Realizing that defendant was bound for I-87—the main route to New York City—Agent Curtis instructed a third Border Patrol agent, Agent Hartigan, to stop defendant's vehicle. Agent Hartigan initiated a stop on Route 11 and discovered four Pakistani nationals in defendant's automobile. None of them had valid immigration papers. The agents arrested the passengers and defendant Singh, the driver.

### C.  *District Court Proceedings*

A federal grand jury indicted Singh on January 14, 2004 on one count of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) (2000). Prior to trial, Singh brought a motion to suppress the evidence seized in the traffic stop on grounds that the agents lacked reasonable suspicion of wrongdoing and that the stop was therefore unlawful. District Judge McAvoy heard testimony from Agents Curtis and Jefferson and denied Singh's motion to suppress, finding the officers had reasonable suspicion of wrongdoing to make the stop.

A jury convicted Singh on the sole count of the indictment on January 29, 2004. The district court entered a judgment of conviction on June 10, 2004 and imposed a sentence on defendant of 10 months imprisonment, three years supervised release, a· $3,000 fine, and a $100 special assessment. This appeal followed.

### DISCUSSION

On appeal Singh asserts the district court erred in denying his pre-trial motion to suppress. Appellant contends the Border Patrol agents did not have reasonable suspicion of wrongdoing sufficient to justify a roving stop. He argues that he did not violate any traffic laws and that the agents did not observe him picking up passengers. Further, Singh maintains the Border Patrol suspected him of wrongdoing simply because the car he was driving was registered to a person with an Indian or Pakistani last name, and was found carrying passengers in an area where Indians and Pakistanis have in the past at-

tempted to cross the border illegally.[2] This, according to Singh, does not amount to reasonable suspicion sufficient for the Border Patrol to initiate a roving stop, and upholding the reasonableness of the stop in this case, he says, "would subject all residents of Champlain, New York traveling on [Route] 11 with passengers in their vehicle to be stopped at random by border patrol agents."

This appeal highlights the tension in the Fourth Amendment between an individual's right to liberty and privacy free from arbitrary interference by police agents on the one hand, and the problems arising from the high number of illegal aliens entering the United States,[3] on the other hand, which some believe may best be handled by stricter law enforcement, involving more stops and more arrests. We think the facts of this case support a finding of reasonable suspicion. The agents' belief that wrongdoing was afoot was fairly reached under governing Supreme Court decisions, and therefore the district court properly denied Singh's motion to suppress.

## I Standard of Review

■ An appeals court reviews a district court's factual findings related to a motion to suppress for clear error. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). When the motion has been denied, all facts are to be construed in the government's favor. *United States v. Casado*, 303 F.3d 440, 443 (2d Cir.2002). We consider the reasonableness of police action to be a "mixed question of law and fact" that is reviewed

*de novo*. *United States v. Reyes*, 353 F.3d 148, 151 (2d Cir.2003). It is so characterized because reasonable suspicion requires that a court, first, identify all the events that led to the stop and, second, determine whether these facts establish reasonable suspicion justifying the stop. The second step applies an objective legal standard to the facts, and thus "reasonableness" in this context is termed a mixed question. *See Ornelas*, 517 U.S. at 696–97, 116 S.Ct. 1657.

## II Roving Border Patrol Stops Under the Constitution

■ Routine searches at the border, or at the functional equivalent of the border (such as an inland airport where an international flight first lands), have long been viewed as reasonable *per se* and need not be supported by probable cause or a warrant. *See, e.g., United States v. Flores–Montano*, 541 U.S. 149, 152–53, 124 S.Ct. 1582, 158 L.Ed.2d 311 (2004); *United States v. Sugrim*, 732 F.2d 25, 29 (2d Cir.1984) (*citing United States v. Ramsey*, 431 U.S. 606, 619, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977)). The rationale for this rule is that our national interest in security allows the United States to insist that a person seeking entry identify himself and his goods as lawfully entitled to enter this country. *See Sugrim*, 732 F.2d at 29.

■ In *Almeida–Sanchez v. United States*, the Supreme Court stated, "searches at an established station near the border, at a point marking the confluence of two or more roads that extend

---

**2.** Singh does not, however, raise, and we therefore have no occasion to consider, an equal protection claim.

**3.** The Border Patrol intercepted more than 930,000 people attempting to cross our borders illegally in 2003, including over 10,000

along our border with Canada. Office of Immigration Statistics, Dep't of Homeland Security, *2003 Yearbook of Immigration Statistics* 155–56 (2004), *available at* http://uscis.gov/graphics/shared/statistics/yearbook/2003/2003Yearbook.pdf

from the border, might be functional equivalents of border searches." 413 U.S. 266, 273, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *see United States v. Jackson,* 825 F.2d 853, 860 (5th Cir.1987) (*en banc*) ("To justify searches at checkpoints labeled the functional equivalent of the border the government must demonstrate with 'reasonable certainty' that the traffic passing through the checkpoint is 'international' in character."). Although the investigatory stop in the case before us was along a road extending along the border, we note that it was conducted by a roving patrol, not at a checkpoint, and was on a road with significant domestic traffic. Therefore, the *per se* reasonableness of searches at borders and their functional equivalents does not apply. *See Sugrim,* 732 F.2d at 29.

■ Border Patrol operations along inland routes—not at the border or its functional equivalent—including permanent checkpoints, temporary checkpoints, and roving patrols are held to a higher standard. The Supreme Court has ruled, for example, that full-blown searches at inland Border Patrol checkpoints and by roving patrols must be supported by consent or probable cause. *See United States v. Ortiz,* 422 U.S. 891, 896–97, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *Almeida–Sanchez,* 413 U.S. at 273, 93 S.Ct. 2535.

■ The Supreme Court has recognized that lesser intrusions by inland roving patrols need be supported only by reasonable suspicion. By that, the Supreme Court means the officer must have a " 'particularized and objective basis' for suspecting legal wrongdoing" given the " 'totality of the circumstances.' " *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (*quoting United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). If "an officer's observations lead him reasonably to suspect that a particular vehicle may con-

tain aliens who are illegally in the country," the officer may, consistent with the Fourth Amendment, briefly detain and question the vehicle's occupants regarding their citizenship, immigration status, and any suspicious circumstances. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). But, any further detention or search must be based on either consent or probable cause, *id.* at 882, 95 S.Ct. 2574; *see Sugrim,* 732 F.2d at 29. *Cf. Muehler v. Mena,* —— U.S. ——, 125 S.Ct. 1465, 1472 n. 3, 161 L.Ed.2d 299 (2005) (noting that *Brignoni–Ponce* requires reasonable suspicion for the decision to stop a vehicle, but creates no such requirement for the officer's subsequent decision to question the occupants about their citizenship and immigration status once the vehicle is stopped).

■ In examining the totality of the circumstances, officers are entitled to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744 (*quoting United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Factors that, in light of the officer's experience and training, may give rise to reasonable suspicion include: (1) characteristics of the area where the vehicle is found; (2) its proximity to the border; (3) usual traffic patterns on that road; (4) previous experience with alien traffic in the area; (5) recent information about specific illegal border crossings there; (6) the driver's behavior, such as attempting to evade officers; (7) characteristics of the vehicle itself; and (8) the appearance of persons in the vehicle, such as mode of dress. *Brignoni–Ponce,* 422 U.S. at 884–85, 95 S.Ct. 2574; *see Sugrim,* 732 F.2d at 30. This list is not exhaustive

and, of course, the fact that some factors are suspicious and others appear innocent does not defeat a finding of reasonable suspicion. *See Arvizu,* 534 U.S. at 274–75, 122 S.Ct. 744 (rejecting "divide-and-conquer" analysis and finding that the court of appeals' "evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase.... Although each of [a] series of acts was 'perhaps innocent in itself,' we [have] held that, taken together, they 'warranted further investigation' ") (*quoting Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Moreover, upon viewing the totality of the circumstances, a finding of reasonable suspicion "need not rule out the possibility of innocent conduct." *Id.* at 277, 122 S.Ct. 744.

### III   Application to the Present Case

■  Viewing the facts in the light most favorable to the government, the Border Patrol agents here had reasonable suspicion to stop appellant's Lincoln Town Car. The agents observed defendant driving a type of vehicle known to be favored by immigrant smugglers because of its large passenger capacity. Although the car was registered near New York City, the agents observed Singh driving on a rural road near the U.S.-Canadian border in an area where illegal immigrants frequently attempt to enter the United States by hiking through the woods. Additionally, the agents learned from the registration search that the car had recently entered the United States from Canada. The agents also observed defendant driving very slowly along the road and tapping his brakes in a manner commonly used as a signal to illegal immigrants that the car is available to pick them up. Singh then drove back to town, parked the car at a McDonald's restaurant, and waited. The agents observed no passengers in the car at that time and no one entered or exited the car while it was parked. While the agents were watching defendant's vehicle in the parking lot, a Border Patrol dispatcher informed them that motion sensors had alerted to a border crossing 15 minutes' walking distance from defendant's prior location on Perry Mills Road. About 15 minutes later, defendant drove back to that same location. The agents observed Singh drive toward a remote location near the border and return with passengers. Appellant then turned onto Route 11 and headed toward I–87, the main route to New York City. At this point, the agents initiated an investigatory stop on Route 11, two miles south of the border.

Based on the totality of these circumstances, all of which fall into categories the Supreme Court expressly found relevant in *Brignoni–Ponce,* the agents had ample grounds to be reasonably suspicious of defendant's actions and lawfully initiated an investigatory stop to assess the citizenship and immigration status of the passengers Singh picked up near the border. The seizure of evidence resulting from this stop did not contravene the Fourth Amendment. Consequently, the district court properly denied defendant's motion to suppress the evidence of illegal transportation of aliens.

### CONCLUSION

Accordingly, for the foregoing reasons, the district court properly denied defendant's motion to suppress, and the judgment of conviction is affirmed.