**UNITED STATES of America,**
**Appellee,**

v.

**Aleksander VASHJA, Defendant–**
**Appellant.**

**No. 07–3664–cr.**

United States Court of Appeals,
Second Circuit.

July 3, 2008.

Arianna R. Berg, Assistant United States Attorney (Jonathan S. Kolodner, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Colleen P. Cassidy, Federal Defenders of New York, Inc., New York, NY, for Appellant.

Present: Hon. RICHARD C. WESLEY, Hon. PETER W. HALL, Circuit Judges, Hon. JOHN G. KOELTL,[1] District Judge.

**SUMMARY ORDER**

Defendant Aleksander Vashja appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York (Jones, *J.*) on July 7, 2007, after a jury convicted him of being an illegal alien in possession of a firearm. On April 12, 2007, Judge Jones sentenced Vashja to a term of 18 months' imprisonment and three years' supervised release. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

On appeal, Vashja argues that the district court erred in denying his motion to suppress the handgun found in his possession because: (1) the stop and frisk was not supported by reasonable suspicion; and (2) the court's finding that Officer Carney was credible was clearly erroneous.

The presence of reasonable suspicion to support a stop is a mixed question of law and fact that is reviewed *de novo. United States v. Singh,* 415 F.3d 288, 293 (2d Cir.2005). "Reasonable suspicion" is measured by an objective test, *United States v. Glover,* 957 F.2d 1004, 1010 (2d Cir.1992), and by reviewing the factual circumstances as a whole, not as discrete and separate facts, *United States v. Barlin,* 686 F.2d 81, 86 (2d Cir.1982); *see also United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) ("When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."). A district court's factual findings relating to a motion to suppress are reviewed for clear error. *Glover,* 957 F.2d at 1007.

■ Viewed as a whole, the circumstances of this case amply support the conclusion that Officer Carney had "a reasonable suspicion that criminal activity may be afoot." *United States v. Colon,* 250 F.3d 130, 134 (2d Cir.2001) (internal quotation marks omitted). Shortly before 11 p.m. on the night in question, three NYPD officers, Kevin Carney, Frank Lucia and Patrick Cotters, received a radio call that there were "either shots fired or a man with a gun" at the Korzo Lounge, 652 East 187th Street between Belmont and Camberleng Avenues in the Bronx.[2] As their marked police car was pulling up to the Korzo Lounge, the officers observed three men standing outside the Europa Café, located across the street from the Korzo Lounge. According to Officer Carney, one of the men—later identified as Vashja—"looked at me, his eyes opened really wide, he got really nervous, grabbed his left side, took off walking eastbound really quick." Officer Carney explained that, based on his prior involvement with gun arrests in his career, Vashja's conduct indicated that Vashja "possibly had a weapon."[3] While Officers Lucia and Cot-

1. The Honorable John G. Koeltl, United States District Court for the Southern District of New York, sitting by designation.

2. Officer Carney testified that he did not remember receiving a description of the suspect in the radio call.

3. Officer Carney has made over 500 arrests himself and has participated in over 2,000.

ters followed the other two males who walked westbound on East 187th Street, Officer Carney followed Vashja, who walked a little way down the street and then stepped between two parked cars. As Officer Carney approached Vashja, he observed that Vashja had a cigarette in his hand, and was "acting like he was smoking it, but it wasn't lit." Officer Carney then frisked Vashja and found a loaded revolver in Vashja's left waistband, the same place that Officer Carney had seen Vashja clutching moments before. In sum, these facts—the officers responding to shots fired in the immediate vicinity in which Vashja was located, Vashja grabbing his waistband, walking swiftly away from the approaching police car and then pretending to smoke an unlit cigarette—constitute "a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744. The district court properly concluded that Officer Carney had a reasonable suspicion of criminal wrongdoing to stop and frisk Vashja.

■ Vashja's attack on the district court's factual findings similarly fails. A district court's credibility determinations are entitled to "greater deference" and will not be overturned unless they are unsupported by the record or the court's analysis. *See Anderson v. City of Bessemer,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* The district court's decision to credit the testimony of Officer Carney was supported by both the evidence adduced at the suppression hearing as well as its own analysis at the culmination of the hearing. In addition, the court found that, although there were inconsistencies between Officer Carney's testimony and that of the other officers, these inconsistencies were "not material and [were] understandable under the circumstances." On this record, such a finding was not clearly erroneous.[4]

For the foregoing reasons, the judgment of conviction is **AFFIRMED.**

---

4. Vashja points to Officer Lucia's testimony that he "believed" Vashja grabbed his right waistband, not his left, and Officer Cotters's testimony that he did not see anyone reaching for his waistband. The slight inconsistency in Lucia's testimony—almost eight months after the events in question—is, as the district court found, "understandable under the circumstances." Further, it is a fair inference from Cotters's testimony that he did not see Vashja when he first arrived on the scene: Officer Cotters testified that he initially saw the two individuals that he and Officer Lucia later stopped, and that after he got out of the squad car (which he was driving), he immediately looked across the street toward the Korzo Lounge to see if anything was in "disarray over there."