11-3554-cr
USA v. Nelson

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

     At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 19th day of October, two thousand twelve.

Present:    ROBERT A. KATZMANN,
            RICHARD C. WESLEY,
            GERARD E. LYNCH,
                    *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

                    - v. -                    No. 11-3554-cr

SHAKA NELSON,

                    *Defendant-Appellant*.

_____

For Defendant-Appellant:          YUANCHUNG LEE, Federal Defenders of New York, Inc., New York, N.Y.

For Appellee:                     HADASSA R. WAXMAN (Brent S. Wible, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Shaka Nelson appeals from a September 2, 2011 judgment of conviction entered by the United States District Court for the Southern District of New York (Castel, *J.*), following a one-day bench trial on stipulated facts. The Government's indictment charged Nelson with one count of possessing ammunition that previously had been shipped and transported in interstate commerce after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). On appeal, Nelson challenges the district court's denial of his suppression motion, arguing that the police officers lacked probable cause to arrest him for disorderly conduct and thus that the search incident to his arrest was improper. Specifically, he contends that the officers lacked probable cause to believe that the following elements of New York's disorderly conduct statute were satisfied: (1) that Nelson was "congregat[ing]" with others; (2) that Officer Pietrowski's order to disperse was "lawful"; and (3) that Nelson had the culpable intent to disturb the peace. We assume the parties' familiarity with the facts and procedural history of the case.

In an appeal from a suppression decision, we review a district court's factual determinations for clear error and its legal holdings *de novo*. *United States v. Stewart*, 551 F.3d 187, 190-91 (2d Cir. 2009). "When the [suppression] motion has been denied, all facts are to be construed in the government's favor." *United States v. Singh*, 415 F.3d 288, 293 (2d Cir. 2005).

2

"A warrantless arrest is justified if the police have probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987). Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "[I]t is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (internal quotation marks omitted).

Section 240.20(6) of the New York Penal Law provides that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6). New York courts have construed "congregat[ing] with other persons" to mean a gathering of "at the very least three persons." *People v. Carcel*, 3 N.Y.2d 327, 333 (1957). Section 15.05(3) of the New York Penal Law provides that a person acts "recklessly" with respect to a statutorily identified result or circumstance when he or she "is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." N.Y. Penal Law § 15.05(3); *see also People v. Weaver*, 16 N.Y.3d 123, 128 (2011) ("We have made clear that a defendant may be guilty of disorderly conduct regardless of whether the action

3

results in public inconvenience, annoyance or alarm if the conduct recklessly creates a risk of such public disruption.").

We first turn to Nelson's contention that the officers lacked probable cause for the arrest because Nelson was not "congregat[ing] with other persons in a public place" when he "refuse[d] to comply with [the] order . . . to disperse." N.Y. Penal Law § 240.20(6). While conceding that he was standing with two other individuals when Officer Pietrowski ordered him to move, Nelson contends that because the other two individuals complied with Pietrowski's dispersal order, he was no longer part of a group when he refused to obey the dispersal order and was thus no longer "congregat[ing] with other persons in a public place." In this case, we need not reach whether Nelson's rather technical interpretation of the statute is correct because, even under Nelson's construction of the statute, the officers had probable cause to arrest him. As already noted, there is no dispute that Nelson was standing with two other persons at the time the officer ordered the group to disperse. There is also no dispute that Nelson refused to obey the officer's order. And while the district court found that two of the three individuals "started to move" when the officer gave the dispersal order, *United States v. Nelson*, No. 10 Cr. 414 (PKC), 2011 WL 1327332, at \*2 (S.D.N.Y. Mar. 31, 2011), it is not clear whether Nelson was, in fact, standing alone at the time of his arrest. Because the Supreme Court has noted that "it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause," *Gates*, 462 U.S. at 235 (1983) (internal quotation marks omitted), the evidence supports a finding of probable cause even if it would not support a conviction.

We next turn to Nelson's argument that the officers lacked probable cause to arrest him because the order to disperse was not "lawful," as dispersal would not serve an important end.

4

In advancing this argument, he contends that the district court applied an improper standard in assessing the legality of the dispersal order.  Quoting language drawn from *People v. Galpern*, 259 N.Y. 279 (1932), the district court ruled that "[u]nder New York's disorderly conduct statute, an order to disperse is lawful unless 'the order was "purely arbitrary" and "not calculated in any way to promote the public order."'"  *Nelson*, 2011 WL 1327332, at *3 (quoting *Crenshaw v. City of Mount Vernon*, 372 F. App'x 202, 206 (2d Cir. 2010) (summary order) (quoting *Galpern*, 259 N.Y. at 284-85)).  Nelson argues that this standard no longer passes constitutional muster because, after the New York Court of Appeals decided *Galpern* in 1932, multiple Supreme Court cases held that loitering laws are unconstitutional to the extent that they "encourage arbitrary and discriminatory enforcement" and fail to provide "minimal guidelines to govern law enforcement."[1]  *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *see also Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90-91 (1965) (noting that law permitting arrest based on "the moment-to-moment opinion of a policeman on his beat . . . bears the hallmark of a police state").  In light of these cases, he contends that the standard employed by the district court provides too much deference to police officers.  We need not decide the proper standard for assessing the legality of dispersal orders, as the undisputed facts establish that the officer's dispersal order here served an important end.  Nelson and his companions were indisputably blocking the only cleared pathway, forcing customers to walk on the snow and ice in order to enter the market and thus creating a safety risk.  Accordingly, because the dispersal order served an important purpose and because the other statutory requirements were satisfied, we cannot conclude that the dispersal order was unlawful.

---

[1] On appeal, while Nelson challenges the district court's interpretation of New York's disorderly conduct statute in light of various Supreme Court decisions concerning the void-for-vagueness doctrine, he has not brought a constitutional challenge to the statute.

Finally, we reject Nelson's contention that the officers lacked probable cause to arrest him because the mens rea requirement of the disorderly conduct statute was not satisfied. At the outset, we note that N.Y. Penal Law § 240.20(6) does not clearly specify whether Nelson must have had the requisite mens rea when he "congregate[d] with other persons," when he "refuse[d] to comply with a lawful order," or at both times. Nonetheless, the officers had probable cause to believe that Nelson had the requisite mens rea at both relevant times. First, there is sufficient evidence to support the district court's conclusion that the officers had probable cause to believe that Nelson was "recklessly creating a risk" of "public inconvenience, annoyance or alarm" when he refused to comply with the officers' lawful order to disperse. *See Nelson*, 2011 WL 1327332, at *5. Nelson's combative tone and abusive language, coupled with the location of the incident, were "sufficient to warrant a person of reasonable caution in the belief" that Nelson was recklessly creating the relevant risks. *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008) (internal quotation marks omitted). Similarly, the evidence also supports the district court's conclusion that the officers had probable cause to believe that Nelson "recklessly creat[ed] a risk" of "public inconvenience, annoyance or alarm" while he congregated outside the store. *See Nelson*, 2011 WL 1327332, at *4. As the district court observed:

> The combination of the icy conditions, the position of defendant's group in the only shoveled path leading up to the door of the Market, and the impediment the defendant's group caused to the goal of the customers to enter the Market in a convenient and safe manner is sufficient to warrant a person of reasonable caution to believe that defendant was recklessly creating a hazardous public inconvenience.

*Id.* Accordingly, under any interpretation of N.Y. Penal Law § 240.20(6), the officers had probable cause to believe that Nelson had the requisite mens rea. Relying principally on *People v. Jones*, 9 N.Y.3d 259 (2007), Nelson argues that the officer could not base the arrest solely on

6

the fact of Nelson's obstructive conduct, because some "independent evidence of the defendant's intent" to disturb the peace was required. *Jones* however, imposes no such independent evidence requirement.

We have considered all of the defendant's remaining arguments and find them to be without merit.  For the reasons stated above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK