19-3471-cr (L)
*United States v. Charkoshvili, et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of February, two thousand twenty-one.

PRESENT:
>           ROBERT D. SACK,
>           SUSAN L. CARNEY,
> >                    *Circuit Judges,*
>           RACHEL P. KOVNER,
> >                    *District Judge.**

---

UNITED STATES OF AMERICA,

>           *Appellee,*

>           v.                                                       Nos. 19-3471-cr,

OLEGI CHARKHOSHVILI, ZURAB GVARLIANI,                                           19-3566-cr

>           *Defendants-Appellants,*

DAVIT SHATIRISHVILI, DAVITI SULAKAURI,

>           *Defendants.***

---

\* Judge Rachel P. Kovner, of the United States District Court for the Eastern District of New York, sitting by designation.
\*\* The Clerk of Court is directed to amend the official caption to conform to the above.

FOR DEFENDANTS-APPELLANTS:    James P. Egan, Federal Public Defender, Syracuse, NY (*for* Olegi Charkhoshvili).

Evans D. Prieston, Esq.,
Long Island City, NY
(*for* Zurab Gvarliani).

FOR APPELLEE:    Rajit S. Dosanjh, Assistant United States Attorney, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York, Syracuse, NY.

Consolidated appeal from judgments of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's order entered June 12, 2018, and judgments of conviction entered on October 22, 2019, are **AFFIRMED**.

Defendants-Appellants Olegi Charkhoshvili and Zurab Gvarliani ("Defendants") appeal from an evidentiary order and judgments convicting them of conspiracy to commit alien smuggling, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I), (a)(1)(B)(i), and (a)(1)(A)(i). On appeal, they contend primarily that, prior to their jury trial, the District Court (Kahn, *J.*) erred by denying their motions to suppress evidence arising from a Border Patrol agent's stop of their car on August 21, 2016, in the Champlain, New York area, near the Canadian border. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

On appeal from a district court's denial of a motion to suppress evidence, we review the court's legal conclusions *de novo* and its factual findings for clear error, viewing the

evidence in the light most favorable to the government. *United States v. Singh,* 415 F.3d 288, 293 (2d Cir. 2005); *see also United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016).[1]

Investigatory stops made by Border Patrol agents patrolling inland routes that are "not at the border or its functional equivalent" are "held to a higher standard" than the "per se reasonableness" rule applied to border searches, but still have the benefit of a more flexible application of established Fourth Amendment constraints than stops divorced from the special circumstances presented by border crossings. *Singh,* 415 F.3d at 294. Still, border patrol agents may "briefly detain and question the vehicle's occupants regarding their citizenship, immigration status, and any suspicious circumstances" only if the "reasonable suspicion" standard of *Terry v. Ohio*, 392 U.S. 1 (1968), is met. *Singh*, 415 F.3d at 294. To justify a roving stop, agents must be "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). In other words, a Border Patrol agent conducting a roving stop—by which we mean a vehicle stop performed near but not precisely at the international border—must have a "particularized and objective basis for suspecting legal wrongdoing" in light of the "totality of the circumstances." *Singh*, 415 F.3d at 294.

In this specialized context, we look to the following non-exclusive factors as we assess whether the agent had reasonable suspicion for the stop: "(1) characteristics of the area where the vehicle is found; (2) [the vehicle's] proximity to the border; (3) usual traffic patterns on that road; (4) [an agent's] previous experience with alien traffic in the area; (5) recent information about specific illegal border crossings there; (6) the driver's behavior, such as attempting to evade officers; (7) characteristics of the vehicle itself; and (8) the appearance of persons in the vehicle, such as mode of dress." *Id.* In light of these factors and on *de novo* review, we conclude that the District Court did not err in denying Defendants' motions to suppress.

---

[1] Unless otherwise noted, in quoting from caselaw this Order omits all alterations, citations, footnotes, and internal quotation marks.

3

Our decision to affirm the District Court's order is based on the following considerations:

*Characteristics of the area where the vehicle was found and its proximity to the border.* The Border Patrol agent who conducted the stop, Agent Reynaldo Almaguer, encountered Defendants' vehicle in a sparsely settled rural area that, in his experience, is "commonly use[d]" by aliens "to enter the United States illegally from Canada." Charkhoshvili App'x 80. *See Singh*, 415 F.3d at 294 ("[O]fficers are entitled to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."). The agent first spotted and stopped Defendants less than two miles from the U.S.-Canadian Border.

*Usual traffic patterns where the stop occurred and characteristics of Defendants' vehicle.* During the suppression hearing, Agent Almaguer testified that "99 percent" of the traffic in the area where the stop occurred is "local traffic," further adding to his suspicion, because before stopping the car, he learned that Defendants' car was registered to an address in Woodstock, New York, a location that is an approximately four hours' drive south of the town of Champlain. Charkhoshvili App'x 122-23. Agent Almaguer averred that "[i]n [his] experience, it is common for smugglers to use vehicles from out of the area to transport aliens." *Id.* 81. *See also Singh*, 415 F.3d at 295.

*Recent information about specific illegal border crossings in the area.* Shortly before conducting the challenged stop, Agent Almaguer received multiple, real-time notifications from authorities that an illegal border crossing was taking place. These consisted of (1) a notice from the Royal Canadian Mounted Police (relayed by Border Patrol radio dispatch) informing him of a suspected border crossing in the area, and (2) an alert that an electronic motion sensor detected movement at the nearby border.

*Defendants' driving behavior.* While his patrol vehicle was parked near the border, Agent Almaguer first observed Defendants' car at approximately 12:20 am as it was being driven "eastbound on Perry Mills Road." Charkhoshvili App'x 81. After waiting "[a]pproximately 90 seconds to two minutes" and observing no other cars pass by, Agent Almaguer drove his

4

own vehicle eastward to pursue Defendants. *Id.* 116-18. He then came across Defendants' car near the location where the electronic motion sensor had alerted Border Patrol to a suspected illegal crossing. According to Agent Almaguer, he suspected that Defendants had stopped there, along the road, to pick someone up because, if they had been "driving the speed limit, [they] would have been already farther down the road" than where he encountered them. *Id.* 118. This suspicion was reasonable in light of the fact that, after they possibly had stopped to pick someone up, the agent observed Defendants' vehicle promptly turn to drive southbound on the interstate highway (*i.e.*, away from the U.S.-Canadian border).

Under these circumstances, we find that Agent Almaguer reasonably suspected that Defendants' vehicle contained one or more aliens who may have illegally entered the county and that he committed no Fourth Amendment violation when he stopped the vehicle. The District Court did not err in so concluding.

\* \* \*

We have considered all of Defendants' arguments on appeal and find in them no basis for reversal. For the foregoing reasons, the District Court's order and judgments of conviction are **AFFIRMED.**

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

5