Reina V. CARRILLOS, Plaintiff,

v.

INCORPORATED VILLAGE OF HEMPSTEAD; Police Officer Americo Masi, individually and as a member of The Incorporated Village of Hempstead Police Department; Suyapa Gomez; Arlington Bodden; Marjorie Bodden; Carlos Flores; and Wendy Almendarez, Defendants.

No. 11–CV–5775 (JFB)(SIL).

United States District Court, E.D. New York.

Signed Feb. 20, 2015.

Thomas F. Liotti, Garden City, NY, for Plaintiff.

Ruben Joseph Coryat, Jamaica, NY, William J. Garry, Keith Michael Corbett, Harris Beach PLLC, New York, NY, for Village Defendants.

Shaun K. Hogan, Michael D. Cassell, Hogan & Cassell, LLP, Jericho, NY, for Non–Village Defendants.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Plaintiff Reina Carrillos ("Carrillos" or "plaintiff") brings this action against defendants Incorporated Village of Hempstead ("the Village") and Police Officer Americo Masi ("Masi") (collectively, the "Village Defendants"); and Suyapa Gomez ("Gomez"), Arlington Bodden ("Mr. Bodden"), Marjorie Bodden ("Ms. Bodden"), Carlos Flores ("Flores"), and Wendy Almendarez ("Almendarez") (collectively, the "Non–Village Defendants"), stemming from Masi's arrest of plaintiff on December 3, 2010 in Hempstead, New York.[1] Plaintiff brings claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for excessive force, false arrest, false imprisonment, malicious prosecution, failure to protect and secure medical treatment, cruel and unusual punishment, conspiracy to deprive plaintiff of her civil rights, supervisory liability and failure to intercede, and *Monell* liability. Plaintiff also asserts pendent state law claims.

Presently before the Court are defendants' respective motions for summary

---

1. On October 23, 2012, the Court issued an order dismissing Flores and Almendarez pur-suant to Federal Rule of Civil Procedure 12(b)(6).

judgment, pursuant to Federal Rule of Civil Procedure 56, on all thirteen causes of action in the amended complaint.[2] For the reasons set forth in detail below, the Village Defendants' motion is granted in part and denied in part on the merits. Specifically, the Court concludes that genuine disputes of material fact preclude summary judgment on the excessive force and false arrest/imprisonment claims against Officer Masi under Section 1983; the related state law claims for assault and battery against Officer Masi and the Village (under a theory of *respondeat superior*); and the related state law claims for false arrest/imprisonment against Officer Masi and the Village (under a theory of *respondeat superior*). The Village Defendants' motion for summary judgment is granted on all other claims.

The Non–Village Defendants' motion is granted in its entirety. Specifically, even construing the evidence most favorably to plaintiff, no rational jury could conclude that the Non–Village Defendants were state actors or conspired with Masi to violate plaintiff's constitutional rights, and there also is no evidence that any Non–Village Defendant physically harmed plaintiff on December 3, 2010. However, the Court, in its discretion, denies the motion

for attorneys' fees. There is an insufficient basis to conclude that plaintiff's counsel knowingly inserted fictional facts in the complaint to overcome a motion to dismiss. Moreover, although there is insufficient evidence for these claims to survive summary judgment, Gomez's alleged statements regarding her influence over the Hempstead Police Department were sufficient (even in the absence of the other allegations) to state a plausible claim. Although discovery uncovered no such influence by Gomez (despite her alleged claimed influence), the absence of such evidence does not warrant a conclusion that the claim was factually or legally frivolous. Counsel for plaintiff's motion for sanctions against the Non–Village Defendants is similarly denied because it is procedurally improper and, in any event, there is no basis for sanctions.

## I. BACKGROUND

### A. *Factual Background*

■ The Court takes the following facts from defendants' respective Rule 56.1 Statements of Fact, and any admissible affidavits, depositions, and exhibits.[3] Contrary to Local Rule 56.1(b), plaintiff did not file a Rule 56.1 Statement of Facts in response to defendants' submissions.[4]

---

**2.** In her opposition, plaintiff only addresses the conspiracy, excessive force, false arrest and imprisonment, malicious prosecution, and municipal liability claims. As a threshold matter, the Court could deem plaintiff to have abandoned any other claims asserted in the amended complaint and grant summary judgment to defendants on those claims. *See, e.g., Maher v. Alliance Mortg. Banking Corp.*, 650 F.Supp.2d 249, 267–68 (E.D.N.Y.2009) (explaining that federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way). However, for the reasons discussed *infra*, those other claims also cannot survive summary judgment on the merits.

**3.** Although the Rule 56.1 Statements of Fact contain specific citations to the record, the Court cites to the statements rather than to the underlying citations.

**4.** Plaintiff's counsel submitted a "Declaration in Opposition," detailing the case's procedural history and evidence; several affidavits; and the depositions of Masi and plaintiff (who was deposed on August 30, 2013, and October 7, 2013). Plaintiff also testified at a hearing pursuant to N.Y. Gen. Mun. Law § 50(H) on May 10, 2011. The Court gives no weight to any statements in Mr. Liotti's declaration that do not contain specific facts or are not based on first-hand knowledge. *See Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983) ("An affidavit of the opposing party's attorney

Consequently, the Court could deem numerous facts in defendants' submissions admitted for purposes of their motions. L.R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003) (Where "the opposing party [ ] fails to controvert a fact so set forth in the [ ] Rule 56.1 statement, that fact will be deemed admitted."); *Litchhult v. USTRIVE2, Inc.*, No. 10–CV–3311 (JFB)(ARL), 2013 WL 3491076, at *2 n. 1 (E.D.N.Y. July 10, 2013) (same). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04–CV–2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not comply with Rule 56.1, his written submissions—and, in particular, the declaration in opposition to the instant motions—refer generally to the relevant portions of the record upon which plaintiff is relying, including an attached affidavit from plaintiff and citations to plaintiff's deposition. Thus, both the defendants and the Court are aware of the portions of the record upon which plaintiff relies in opposition to the motions, and defendants have not identified any prejudice arising from plaintiff's failure to comply with Rule 56.1. Accordingly, in the exercise of its broad discretion, the Court will not reject plaintiff's opposition based upon his failure to comply with Rule 56.1, but rather has fully considered plaintiff's opposition to defendants' summary judgment motion on the merits. *See, e.g., Photopaint Techs., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 n. 2 (2d Cir.2003) (excusing failure to comply with Local Civil Rule 56.1 where the relevant facts were apparent from the parties' submissions and there was no evidence of prejudice from the defect); *Williams v. R.H. Donnelley Inc.*, 199 F.Supp.2d 172, 174 n. 1 (S.D.N.Y.2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

The Court construes the facts in the light most favorable to plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir.2005).

### 1. Plaintiff's Amended Complaint

In the Amended Complaint, plaintiff alleges that she and Gomez entered into a business relationship to open a restaurant and night club, Gusto Latino Bar & Restaurant ("Gusto"), but that the Non–Village Defendants forced her out of the relationship by December 2010 and prohibited her from entering Gusto. (Non–Vill. Defs.' 56.1 ¶ 3.) This issue culminated in a disagreement on December 3, 2010, when the Non–Village Defendants refused to allow plaintiff to remain in Gusto and then called

---

which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight."); *see also* Fed.R.Civ.P. 56(c)(4). Defendants also object to any reliance on a supposed letter (referenced in counsel's declaration) to the Hempstead Police Department from plaintiff's former attorney. Defendants further object to any reliance on the affidavits of Jose Misael Canales, Simon A. Lainez, Carlos Humberto Santos, and Mirian Canales, who were not identified in plaintiff's required disclosures during discovery. The Court need not resolve these objections at this juncture because, even if the Court considered these documents, it would not alter the Court' conclusion with respect to the summary judgment motion. In other words, even without consideration of these documents, plaintiff has sufficient evidence to create genuine issues of disputed fact on the excessive force and false arrest/imprisonment claims that preclude summary judgment. Similarly, even if the Court consider those documents, plaintiff's remaining claims cannot survive summary judgment for the reasons discussed *infra*.

Masi, a police officer employed by the Incorporated Village of Hempstead Police Department, (Vill. Defs.' 56.1 ¶ 3), to inform him that they wanted plaintiff arrested, (Non–Vill. Defs.' 56.1 ¶ 6). According to plaintiff, Hempstead Police Officers, including Masi, frequented Gusto, and Masi received free food from and often spoke to Gomez. (Non–Vill. Defs.' 56.1 ¶ 4.) Plaintiff also alleges that Gomez bragged that she had Masi's cell phone number and could have anyone arrested by the Hempstead Police Department. (*Id.* ¶ 5.)

### 2. The December 3, 2010 Incident

During 2010, plaintiff and Gomez partnered to run Gusto, located at 387 Fulton Avenue in Hempstead, New York. (Non–Vill. Defs.' 56.1 ¶ 17; *see, e.g.,* Carrillos Dep. at 218.) Just before Gusto opened, Gomez told plaintiff that she did not want to be in a partnership with her and to not come to the venue.[5] (Non–Vill. Defs.' 56.1 ¶¶ 18–19.) Gusto opened for business on or about November 26, 2010. (*Id.* 56.1 ¶ 19.)

Plaintiff nevertheless went to Gusto on November 26 at about 2:00 a.m., entered the kitchen, and washed pots. (*Id.* ¶ 20.) Because plaintiff would not leave after the restaurant closed, one of the Non–Village Defendants (Gomez or Almendarez) called the police to remove plaintiff from the premises. (*Id.*) Plaintiff did not know what number was called or whether anyone had a police officer's cell phone number. (*Id.*) In any event, plaintiff remained at Gusto even after learning the police had been called. (*Id.*) Two police officers responded to Gusto, and the female officer asked plaintiff to leave, which she did. (*Id.*) Plaintiff also told the officers that she was Gomez's partner. (Carrillos Dep. at

234.) The officers responded that if she wanted to be in the restaurant, she had to bring proof that she was a partner. (*Id.; see also* Carrillos Aff. ¶ 8 (stating that plaintiff secured records before returning to Gusto).)

According to the Non–Village Defendants, plaintiff returned to Gusto on December 3, 2010, at about 5:30 p.m., and entered an employees-only section. (Non–Vill. Defs.' 56.1 ¶¶ 21–22.) Plaintiff claims that she "had done nothing wrong and was not causing a disturbance." (Carrillos Aff. ¶ 9.) After plaintiff refused to leave, someone called the police; at her § 50(h) hearing, plaintiff testified that Gomez called, but at her deposition, she testified that Mr. Bodden called. (Non–Vill. Defs.' 56.1 ¶¶ 22, 46.) In any event, plaintiff did not know who called, or whether anyone had a police officer's cell phone number. (*Id.* ¶ 22; *see also id.* ¶ 34 (plaintiff did not know whether Gomez had officer's number).) According to Masi, dispatch told him to respond to Gusto. (*Id.* ¶ 37.) The case report indicates that the call from Gusto was placed to 911. (*Id.*)

Masi, along with Officer Vicino ("Vicino") responded to Gusto about ten to fifteen minutes later. (*Id.; see also id.* ¶ 24.) When Masi arrived, a woman behind the bar said she wanted "some other lady removed." [6] (Masi Dep. at 17.) Gomez testified that, because her English is limited, she only spoke briefly with the police after they arrived, and she asked them to arrest Carrillos because she was disturbing customers in Gusto by telling them to leave. (Non–Vill. Defs.' 56.1 ¶ 44.) Plaintiff testified to the following: (1) that Ms. Bodden told the officers that plaintiff could remain only as a customer, not as an owner; (2)

---

**5.** The business dispute between plaintiff and Gomez is the subject of a separate lawsuit in state court.

**6.** At his deposition, Masi did not recognize the names of the Non–Village Defendants. (Masi Dep. at 18.)

that Masi and Vicino did not have their guns drawn; and (3) that Masi and Vicino did not search or damage the restaurant. (Carrillos Dep. at 271; Non–Vill. Defs.' 56.1 ¶¶ 26, 47.) Plaintiff also testified that Gomez said the officers should take plaintiff outside and arrest her. (Carrillos Dep. at 271–72.) According to plaintiff, the police then explained to her that Gomez did not want her in Gusto and that she should leave. (Non–Vill. Defs.' 56.1 ¶ 27.) Plaintiff, however, claims that she showed the police the paperwork regarding her ownership, but the police took the paperwork and threw it on the floor. (Carrillos Aff. ¶ 9; see also Carrillos Dep. at 48–49 (stating that Masi took papers from her and threw them on the bar).) Plaintiff also asserted the following: (1) that she "had no contact with patrons or anyone else until the police falsely arrested" her; (2) that she was not creating a disturbance; and (3) that her husband was present but she "had not congregated with any other persons" or even raised her voice. (Carrillos Aff. ¶ 10.) Plaintiff further testified that, although she initially refused to leave, she then told the police officers that she was going to leave and return when she had additional evidence of ownership. (Carrillos Dep. at 51–52 ("So then I told them that I was going to leave and that I was going to return with more official proof that I was an owner with Mrs. Suyapa.").) Plaintiff asserts that, after she told them she was going to leave ànd even got off the barstool to leave, the officers used force against her and arrested her, as discussed below. (Id. at 52–57.)

According to Masi, he and Officer Vicino tried to explain to Carrillos that her dispute with Gomez was a civil matter and there was nothing the officers could do at that hour, because it was a legal issue that would have to be resolved by a judge and plaintiff had no proof to support her claims. (Masi Dep. at 25; Masi Decl. ¶ 7.) Masi testified, "We asked her to leave over two dozen times in English and Spanish with the help of a civilian that was there, and she constantly refused and gave us no choice but to make an ultimatum that if you don't leave you are going to be arrested for disorderly conduct." (Masi Dep. at 25.) Plaintiff responded, "[Y]es, because you are the law." (Carrillos Dep. at 273; see also Carrillos 50(h) at 68 (stating that she was warned she would be arrested, she responded, "Okay, if you want to arrest me, it's fine.").) After speaking with plaintiff and others for about twenty minutes, the police arrested Carrillos for disorderly conduct, pursuant to Village of Hempstead Code § 95–2–F, because of her refusal "to comply with the lawful order of the police." (Non–Vill. Defs.' 56.1 ¶¶ 30, 40–41; Masi Decl. ¶ 8.) Masi avers that "Plaintiff was arrested based upon her failure to comply with a lawful order to remove herself from the premises after being repeatedly told to do. so," not because any other person directed him to arrest her.[7] (Masi Decl. ¶¶ 12, 14.) Plaintiff was in custody for about three hours. (Masi Decl. ¶ 11.) The charges against her ultimately were dismissed.

It is uncontroverted that none of the Non–Village Defendants physically touched Carrillos or caused her any physical injury during the course of the incident. (Non.-Vill. Defs.' 56.1 ¶ 35.) The parties dispute whether the officers used excessive force in arresting plaintiff. Masi testified that (1) neither he nor Vicino had physical contact with Carrillos other than placing her in handcuffs and escorting her

---

7. The charging document states that Masi asked Carrillos to leave the premises, where she was involved in a dispute over a civil matter, but that Carrillos refused and consequently was arrested. (Charging Document, Vill. Defs.' Ex. F.)

out of the bar; (2) neither he nor Vicino punched, kicked, or assaulted Carrillos; and (3) Carrillos did not struggle in any fashion as he placed her under arrest. (Masi Dep. at 44–45.) Masi claims, however, that when they got near the front door, "Plaintiff dropped herself to the floor and became dead weight which required us to pick up her up by her upper arms and take her outside to place her in a marked police car." (Masi Decl. ¶ 10.) Plaintiff testified that the officers got angry, grabbed her hard, pushed her, and took her by force. (Carrillos Dep. at 52–53.) She screamed and told them they were hurting her hands and wrists. (*Id.* at 53–54.) She also testified that the officers kicked her and punched her during the arrest. (*Id.* at 80.)

According to Carrillos, on November 26, 2010, Gomez said that she could have anyone arrested by the Hempstead Police because she had a lot of influence over them. (Carrillos Dep. at 262.) Plaintiff admitted, however, that the first time she ever saw Masi was December 3, 2010. (*Id.* at 260.) She did not know whether he previously had been at Gusto, spoken to Gomez, or received free food from Gomez. (*Id.* at 260–61.) Plaintiff also did not know if Gomez had any officer's telephone number. (*Id.* at 262.) Gomez testified that she was not aware of any officers coming to Gusto before December 3, and she did not know Masi or Vicino. (Non–Vill. Defs.' 56.1 ¶ 48.) She did not recall saying she could have anyone arrested or that she had any influence over the police. (*Id.* ¶ 49.) Masi testified that he had never been in Gusto before December 3 as a patron, and never received free food there. (*Id.* ¶ 42.) Masi also testified that he never provided his cell phone to Gomez; that he does not let civilians direct him whether or not to arrest someone; that even if Gomez had asked him to arrest plaintiff, he would not have done so based upon this request; and that plaintiff was arrested only because

she refused to comply with the officers' requests for her to leave. (*Id.* ¶ 44.)

### B. *Procedural Background*

Plaintiff commenced this action on November 28, 2011, and filed an amended complaint on May 25, 2012. Masi and the Village answered the amended complaint on June 29, 2012. On October 22, 2012 (as reflected in the order dated October 23, 2012), the Court granted the Non–Village Defendants' motion to dismiss with respect to Flores and Almendarez. Defendants filed their respective motions for summary judgment on May 12, 2014. Plaintiff opposed on July 11, 2014. The Non–Village Defendants replied on July 21, 2014, and the Village Defendants replied on July 28, 2014. Plaintiff filed a sur-reply on August 14, 2014, and the Village Defendants filed a response on August 19, 2014. The Court held oral argument on September 17, 2014. The matter is fully submitted.

### II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir.2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The court " 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.' " *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir.2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir.1996)); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As the Supreme Court stated in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC*

*v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996) (quoting *Research Automation Corp.,* 585 F.2d at 33).

### III. DISCUSSION

Defendants move for summary judgment on all causes of action. Plaintiff's Section 1983 claims against the Non–Village Defendants are premised on the notion that those defendants were acting under color of state law or conspired with the police to violate her constitutional rights. The pendent state law claims are all related to the arrest on December 3, 2010.

### A. *Section 1983 Claims*

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir.2004). Plaintiff brings claims under Section 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments.

### 1. Conspiracy Claim

Plaintiff alleges that the Non–Village Defendants are liable under Section 1983, arguing that they were acting under color of state law in light of Masi's alleged relationship with them. The Court concludes that this claim cannot survive summary judgment.

### a. Legal Standard

A private actor may be considered to be acting under the color of state law for purposes of Section 1983 if she was "'a willful participant in joint activity with the State or its agents.'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir.2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). This potential liability under Section 1983 also applies to a private party who "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman*, 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, to prove a private actor acted under the color of state law when she engaged in allegedly unconstitutional conduct, a plaintiff must point to evidence tending to show either (1) the existence of joint activity between the private actor and the state or its agents, or (2) a conspiracy between the state or its agents and the private actor.

As to a showing of joint activity, the summoning of police officers or the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir.1999) ("Healey's provision of background information to a police officer does not by itself make Healey a joint participant in state action under § 1983," and "Officer Fitzgerald's active role in attempting to resolve the dispute after Healey requested police assistance in preventing further disturbance also does not, without more, establish that Healey acted under color of law."); *see also Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir.1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [Section] 1983 ...."). Similarly, if a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor. *See Shapiro v. City of Glen Cove*, 236 Fed.Appx. 645, 647 (2d Cir.2007) (declining to hold that private actor acted under color of state law when "ample evidence show[ed] that the officials who searched [plaintiff's] house exercised independent judgment rather than acting at [private actor's] direction"); *Butler v. Goldblatt Bros.*, 589 F.2d 323, 327 (7th Cir.1978) (granting summary judgment to private defendant on plaintiff's Section 1983 claim because defendant "did [nothing] more than supply information to police officers who then acted on their own initiative in arresting [plaintiff]"); *Serbalik v. Gray*, 27 F.Supp.2d 127, 131–32 (N.D.N.Y.1998) ("[A] private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." (citing *Auster Oil & Gas Inc. v. Stream*, 764 F.2d 381, 388 (5th Cir.1985))). In short, it is only when a private actor takes a more active role and jointly engages in action with state actors, that he will be found to have acted under color of state law for purposes of Section 1983. *See, e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (finding that, when a supplier sought prejudgment attachment of a debtor's property, supplier was a state actor because he "invok[ed] the aid of state officials to take advantage of state-created attachment procedures"); *Adickes*, 398 U.S. at 152, 90 S.Ct. 1598 (finding plaintiff entitled to relief under Section 1983 against private party if she could prove that private party and police officer "reached an understanding" to cause her unlawful arrest).

Alternatively, to demonstrate that a private party was acting under color of state law by virtue of the fact that she was engaged in a conspiracy with the state or its agents, a plaintiff must put forth evidence of "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages." *Fisk,* 401 F.Supp.2d at 376 (quoting *Ciambriello,* 292 F.3d at 324–25). Unsubstantiated allegations of purported collaboration between a state actor and a private party are insufficient to defeat a motion for summary judgment. *See Scotto v. Almenas,* 143 F.3d 105, 115 (2d Cir.1998); *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993) (affirming grant of summary judgment in defendants' favor because plaintiff's allegations of conspiracy were "unsupported by any specifics, and many of them [were] flatly contradicted by the evidence proffered by defendants").

### b. Analysis

As a preliminary matter, the only evidence plaintiff proffers in support of her allegations is Gomez's statement that she could call the Hempstead Police to arrest plaintiff, and the fact that Gomez asked the police to arrest plaintiff. This fails to raise a genuine dispute for several reasons.

For instance, Magistrate Judge Wall has deemed the following facts admitted because plaintiff failed to respond to the Non–Village Defendants' Requests to Admit (*see* Docket No. 50): (1) Gomez had no legal authority to direct the police officers to act; (2) Gomez was not acting under color of state law or in concert with the police officers; and (3) plaintiff was unaware of any agreement between Gomez and individuals employed by the Village of Hempstead. (*Accord* Non–Vill. Defs.' 56.1

¶ 50.) Regardless, plaintiff also testified that she had no knowledge of any agreement or conspiracy between the Non–Village and Village Defendants, or any idea whether the Non–Village Defendants had any relationships with the arresting officers. (Carrillos Dep. at 260–62.) There also is no other evidence in the record of a concerted or premeditated plan between defendants to violate plaintiff's constitutional rights. To the contrary, the uncontroverted evidence shows that neither Masi nor Vicino knew the Non–Village Defendants or plaintiff, and that neither officer ever had frequented Gusto. (Non–Vill. Defs.' 56.1 ¶¶ 42–44, 48–49.) Masi even testified that he would never arrest someone based on a private citizen's demand, and that he arrested plaintiff because she refused to comply with numerous orders. (*Id.* ¶ 44.) It also is uncontroverted that the call to the police was placed to 911, not directly to an officer. (*Id.* ¶ 37.) Merely summoning or providing information to state actors, without more, does not constitute joint action for the purposes of Section 1983. *See Ginsberg,* 189 F.3d at 272; *Benavidez,* 722 F.2d at 618.

Additionally, it is undisputed that Ms. Bodden stated that plaintiff could remain as a customer, and the officers spoke with all parties involved for about twenty minutes before arresting plaintiff for disorderly conduct. (Carillos Dep. at 271; Non–Vill. Defs.' ¶¶ 30, 40–41.) Thus, the uncontroverted evidence shows that when the officers entered Gusto on December 3, they did so without knowing whether they would have to make an arrest. The Non–Village Defendants also did not know whether the officers would arrest plaintiff. Accordingly, given this uncontroverted evidence and the absence of any evidence to support plaintiff's claims, the Non–Village Defendants cannot be deemed state actors. *See Shapiro,* 236 Fed.Appx. at 647 (ex-

plaining that when a state actor's alleged unconstitutional conduct is due to his own initiative, rather than the directive of a private party, the private party will not be deemed a state actor).

For similar reasons, plaintiff has failed to proffer evidence that raises a genuine issue of material fact as to the existence of a conspiracy between the Village and Non–Village Defendants. There is no evidence, other than the unsupported allegations of purported collaboration, of a plan or "agreement" between defendants to "act in concert to inflict an unconstitutional injury." *Fisk*, 401 F.Supp.2d at 376. This is insufficient to defeat the motions for summary judgment on the claims against the Non–Village Defendants and the conspiracy claim. *See Scotto*, 143 F.3d at 115; *Young v. Suffolk Cnty.*, 922 F.Supp.2d 368, 388–89 (E.D.N.Y.2013) (granting summary judgment to private defendants on § 1983 Fourth Amendment claim where there was nothing more than unsubstantiated allegations of purported collaboration with state actors). In sum, plaintiff has failed to point to any evidence from which a rational jury could find (1) the existence of joint activity, or (2) a conspiracy between the Non–Village and Village Defendants. Accordingly, the Court grants summary judgment to the Non–Village Defendants on the Section 1983 claims and summary judgment to the Village Defendants on the conspiracy claim.[8]

### 2. Excessive Force Claim

Plaintiff alleges Masi violated plaintiff's Fourth Amendment rights by using excessive and unreasonable force when he arrested plaintiff.[9] As set forth below, genuine disputes of material fact preclude summary judgment on this claim.

8. This ruling disposes of the federal claims against the Non–Village Defendants, but the Court shall retain supplemental jurisdiction over any state law claims asserted against them, because it retains federal question jurisdiction over the Village Defendants. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."). The only state law claims asserted against the Non–Village Defendants are counts nine and ten—assault and battery, and false arrest. At her deposition, Carrillos stated that no Non–Village Defendant ever physically touched her or caused her any type of physical injury. Further, the evidence is uncontroverted that the Hempstead Police, not the Non–Village Defendants, decided to arrest plaintiff. It is well settled under New York law that civilian complainants will not be held liable for state tort claims, such as false arrest, "by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed." *Levy v. Grandone*, 14 A.D.3d 660, 661, 789 N.Y.S.2d 291 (N.Y.App. Div. 2d Dep't 2005) (internal quotation marks omitted). It is uncontroverted that Officer Masi made the decision to arrest based upon the events that transpired after he arrived at the location and his own judgment. Given these undisputed facts, no rational jury could find that the Non–Village Defendants assaulted or falsely arrested plaintiff. Accordingly, the Court grants summary judgment to the Non–Village Defendants on the state law claims against them.

9. Although plaintiff also appears to bring an excessive force claim under the Eighth Amendment, that claim is dismissed because a claim for excessive force at the time of arrest falls within the Fourth Amendment, not the Eighth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Cogdell v. City of Elmira*, No. 13–CV–0764M, 2014 WL 5304892, at *1 n. 1 (W.D.N.Y. Oct. 14, 2014).

### a. Legal Standard

A police officer's use of force is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [the officer], without regard to [the officer's] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). Physical force is often necessary, and thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (internal brackets, citation, and quotation marks omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *accord Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir.2006). The court must inquire into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir.2000) (citations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865.

### b. Analysis

According to the Village Defendants, summary judgment is warranted because Masi testified that he did not kick, harm, punch, push, or shove plaintiff (denying the allegations in the amended complaint), and Gomez corroborated the circumstances surrounding plaintiff's arrest. The Village Defendants also argue that whatever force used was reasonable under the circumstances. Plaintiff, however, testified that the police officers got angry, grabbed her hard, pushed her, and took her by force. (Carrillos Dep. at 52.) In particular, she testified that, without provocation, the officers pushed her through the door and, after she fell to her knees, they picked her up and pushed her to the ground again. (*Id.* at 53–54.) Plaintiff also testified that she screamed and told them they were hurting her hands and wrists. (*Id.* at 53–54.) She also testified that the officers kicked her and punched her during the arrest. (*Id.* at 80.)

Accepting plaintiff's version of the events, and viewing the facts in the light most favorable to plaintiff, as the Court must, a rational jury could therefore find that the officers used excessive force when they arrested Carrillos. *See Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.2004) ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising." (citing *Robison v. Via*, 821 F.2d 913, 924–25 (2d Cir.1987))); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). At oral argument, counsel

for the Village Defendants argued that the force was necessary because plaintiff purposefully dropped to the ground as they tried to arrest her, and the officers' version is more credible than plaintiff's version. However, the Court cannot resolve credibility determinations on summary judgment, and plaintiff testified, *inter alia*, that she was pushed to the ground twice, and kicked and punched—all, according to plaintiff, without any resistance or provocation by her. Her sworn testimony is sufficient to create genuine issues of disputed fact that preclude summary judgment on the excessive force claim against Officer Masi.[10] Accordingly, the Court denies the Village Defendant's motion for summary judgment on the excessive force claim under § 1983.[11]

■ The above-referenced factual disputes also prevent the Court from determining at the summary judgment stage that Masi merits qualified immunity. In this case, the question of whether it was objectively reasonable for Masi to believe he was not violating plaintiff's rights cannot be determined until these factual disputes are resolved. In other words, if (as plaintiff claims) Officer Masi, without any resistance or provocation by plaintiff, pushed her to the ground twice, kicked her, and punched her, he would not be protected by qualified immunity. *See Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756, 764 (2d Cir.2003) (denying summary judgment on qualified immunity grounds having already determined that there were disputed facts regarding the

10. Plaintiff also submitted affidavits from other alleged eyewitnesses to support her version of events. *See, e.g.,* Affidavit of Jose Misael Canales at ¶¶ 2–6 ("I heard the Officers call Reina a 'f* * *ing b* * * * *', a 'f* * *ing asshole' and other bad words that I did not understand. Reina did not struggle at all. I heard Suyapa Gomez tell the police to 'take her', 'arrest her.' I saw the police officers push Reina down on the ground after she was handcuffed. They also pushed, grabbed and shoved her even though she was not resisting in any way. I do not believe that there was any cause to arrest Reina."); Affidavit of Simon A. Lainez at ¶ 4 ("The officers called Reina a 'f* * *ing b* * * *' and other bad words which I unfortunately know in both English and Spanish. The officers handcuffed Reina, pushed her, shoved her and threw her down on the ground. She did not resist or even raise her voice. She did nothing wrong to warrant her arrest."); Affidavit of Carlos Humberto Santos at ¶¶ 5–7 ("I saw the police officers push Reina down on the ground after she was handcuffed. They also pushed, grabbed and shoved her even though she was not resisting in any way. I do not believe there was any cause to arrest Reina."). Defendants argue these witnesses were not disclosed during discovery and object to the Court's consideration of these affidavits. As noted *supra,* the Court need not resolve this objection because, even without

these affidavits, plaintiff's sworn testimony alone is sufficient to preclude summary judgment on the excessive force claim.

11. Because claims for assault and battery under New York law are judged under the Fourth Amendment's objective reasonableness standard, *e.g., Crews v. Cnty. of Nassau,* 996 F.Supp.2d 186, 211–12 (E.D.N.Y.2014); *Gilliard v. City of New York,* No. 10–CV–5187 (NGG)(CLP), 2013 WL 521529, at *10 (E.D.N.Y. Feb. 11, 2013), those pendent state law claims survive summary judgment. In addition, "[u]nlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of *respondeat superior.*" *L.B. v. Town of Chester,* 232 F.Supp.2d 227, 239 (S.D.N.Y.2002). "No municipal custom or policy need be proven to establish the liability of the [municipality] for that violation of ... state law, for '[m]unicipalities surrendered their common-law tort immunity for the misfeasance of their officers and employees long ago.' " *Lore v. City of Syracuse,* 670 F.3d 127, 168 (2d Cir.2012) (quoting *Tango v. Tulevech,* 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983)). Accordingly, plaintiff's state law battery and assault claim also survives against the Village on a theory of *respondeat superior.*

reasonableness of the officer's conduct); *Benson v. Yaeger*, No. 05–CV–784S, 2009 WL 1584324, at *7 (W.D.N.Y. June 3, 2009) ("[T]he only issue is whether the Officers' conduct was objectively reasonable—the very question upon which this Court has found there are genuine issues of material fact. Because the factual disputes as to the objective reasonableness of the Officers' conduct overlap in both the excessive force context and the qualified immunity context, summary judgment must be denied here."). Accordingly, summary judgment on qualified immunity grounds is denied.

### 3. False Arrest, False Imprisonment, and Malicious Prosecution Claims

The Village Defendants move for summary judgment on the false arrest, false imprisonment, and malicious prosecution claims against Officer Masi, arguing that, among other things, Masi had probable cause to arrest plaintiff on December 3, 2010. As discussed below, genuine disputes of material fact preclude summary judgment on false arrest/imprisonment claims. However, summary judgment is warranted on the malicious prosecution claim.

#### a. Legal Standard

 "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant*, 101 F.3d at 852 (false arrest); *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

 The elements of a false arrest claim under New York law are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Weyant*, 101 F.3d at 853. "Furthermore, when an arrest is made without a warrant, the officer has acted outside the scope of the legal process and therefore a rebuttable presumption arises that such an arrest is unlawful. The defendant has the burden of raising and proving the affirmative defense of probable cause." *Rodriguez v. City of New York*, 149 Misc.2d 295, 563 N.Y.S.2d 1004, 1005 (N.Y.Sup.Ct.1990) (citing *Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 335 N.E.2d 310 (N.Y. 1975)). Probable cause is "a complete defense to a cause of action for false arrest." *Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 210, 451 N.Y.S.2d 677, 436 N.E.2d 1279 (N.Y.1982). "The same holds true for [a] false imprisonment claim[ ] because, under New York law, the claim is identical to a false arrest claim and the federal claim looks to the elements of the state claim." *Kilburn v. Vill. of Saranac Lake*, 413 Fed. Appx. 362, 363 (2d Cir.2011) (citations omitted).

 The Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir.2007) (internal citation and quotation marks omitted). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir.2009) (quoting *Zellner v. Summerlin*,

494 F.3d 344, 368 (2d Cir.2007)); *see also Weyant,* 101 F.3d at 852 (citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (additional citations omitted)). Furthermore, "the validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Haussman v. Fergus,* 894 F.Supp. 142, 147 (S.D.N.Y.1995) (citing *Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). "Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." *Haussman,* 894 F.Supp. at 147. Moreover, a determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation ..., the knowledge of one is presumed shared by all." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989) (internal citations and quotation marks omitted); *see also Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (citing *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant,* 101 F.3d at 852 (citations omitted).

▊ To succeed on a malicious prosecution claim under Section 1983, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice. *Droz v. McCadden,* 580 F.3d 106, 109 (2d Cir.2009); *Drummond v.*

*Castro,* 522 F.Supp.2d 667, 677–78 (S.D.N.Y.2007). Malicious prosecution claims under § 1983 also require that there " 'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.' " *Conte v. Cnty. of Nassau,* 06–CV–4746 (JFB)(ETB), 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. Cnty. of Rockland,* 373 F.3d 310, 316 (2d Cir.2004)). "Unreasonable seizure may be shown if a person is taken into custody, imprisoned, or physically detained." *Jean v. City of New York,* 08–CV–00157 (RER), 2009 WL 3459469, at *9 (E.D.N.Y. Oct. 22, 2009). "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York...." *Manganiello v. City of New York,* 612 F.3d 149, 161–62 (2d Cir.2010) (alterations, citations, and quotation marks omitted).

▊ The Court also notes that an arresting officer is entitled to qualified immunity on a claim of arrest without probable cause and of malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *See O'Neill v. Town of Babylon,* 986 F.2d 646, 649–50 (2d Cir.1993); *see also Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991).

b. Analysis

Masi arrested plaintiff for disorderly conduct, pursuant to Village of Hempstead Code § 95–2–F.[12] Section 95–2–F provides that a person is guilty of disorderly con-

---

**12.** Defendants do not argue that probable cause to arrest existed for any crime other than Section 95–2F. *See* Village Defendants'

Memorandum of law, at 11 ("Probable cause to arrest the Plaintiff existed on December 3, 2010 for disorderly conduct.")

duct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," she "congregates with other persons in a public space and refuses to comply with a lawful order of the police to disperse." As set forth below, if plaintiff's version is accepted as true and all reasonable inferences are drawn in her favor, a rational jury could conclude that it was not objectively reasonable for Masi to believe probable cause existed to arrest and prosecute plaintiff.

■■■ First, there is a factual dispute as to whether plaintiff congregated "with other persons in a public space." It is well settled under New York law that "[t]he term 'congregates with others', as used in the statute, requires at the very least three persons assembling at a given time and place." *People v. Carcel*, 3 N.Y.2d 327, 333, 165 N.Y.S.2d 113, 144 N.E.2d 81 (1957) (citations omitted); *see also United States v. Nelson*, 500 Fed.Appx. 90, 91 (2d Cir.2012) ("New York courts have construed 'congregat[ing] with other persons' to mean a gathering of 'at the every least three persons.'") (quoting *Carcel*, 3 N.Y.2d at 333, 165 N.Y.S.2d 113, 144 N.E.2d 81). Plaintiff testified that, at the time the police arrived, she was only with her boyfriend, sitting at the bar. (Carrillos Dep. at 42, 45–46.). Thus, there is a disputed issue of fact as to whether plaintiff was congregating with others that precludes summary judgment on this claim. *Cf. Nelson*, 500 Fed.Appx. at 92–93 (rejecting argument that officers lacked probable cause for arrest because defendant was not "congregating with other persons in a public place" when he refused to comply with dispersal order, because there was no dispute that defendant was standing with two other persons at time officers ordered group to disperse).

■■■ Second, there is a disputed issue of fact as to whether plaintiff was causing an annoyance at the time of her arrest. Plaintiff claims that, although she was with her boyfriend, he was sitting next to her and not involved in the events at Gusto. (*See* Carrillos Dep. at 45–46.) Plaintiff also has stated that (1) she had no contact with patrons or anyone else until the police arrested her; (2) she was not creating any disturbance, did not congregate with any other persons, and did not even raise her voice; and (3) the officers refused to look at the paperwork she brought with her. (*E.g.*, Carrillos Aff. ¶¶ 9–10.) Defendants emphasize that Gomez called the police because plaintiff was disturbing other customers. (*See, e.g.*, Non–Vill. Defs.' 56.1 ¶ 44.) However, plaintiff's testimony is sufficient to create a disputed fact as to whether there was probable cause to believe that she was causing a public annoyance.

■■■ Third, there is a genuine issue of fact as to whether, at the time of her arrest, plaintiff was refusing to leave. Plaintiff admits that she initially failed to comply with Masi's and Vicino's orders to leave the premises until she had further proof she could be there as an owner. However, plaintiff also testified that she eventually agreed to leave, and return when she had official proof of ownership. *See* Carrillos Dep. at 51 ("So then I told them that I was going to leave and that I was going to return with more official proof that I was an owner with Mrs. Suyapa."). Plaintiff testified that, when she got off the barstool to leave, the officers exerted force on her and arrested her. (*Id.* at 51–52.) Thus, plaintiff's testimony that she was arrested as she tried to leave the business creates an issue of fact as to whether she was arrested for refusing to comply with the officers' order to leave. *See, e.g., C.G. ex rel. Gonzalez v. City of*

*New York,* No. 12–CV–1606 (ARR)(VVP), 2013 WL 5774291, at *5 (E.D.N.Y. Oct. 24, 2013) (denying summary judgment to defendants on false arrest claim because one of essential elements of disorderly conduct offense was disputed: whether or not plaintiff complied with officer's order to disperse); *cf. Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 338–39 (E.D.N.Y. 2006) (finding qualified immunity with respect to obstruction of governmental administration in connection with lawful search, where plaintiff also was convicted of harassment and criminal mischief based on the same conduct, and noting that "[a] finding of probable cause for obstructing governmental administration, under N.Y. Penal Law § 195.05, 'may be predicated upon, for example, a defendant's refusal to obey orders to leave a premises, to exit a vehicle, to step back from an accident scene or to keep away from an area where a disturbance is taking place.'" (quoting *Wilder v. Vill. of Amityville,* 288 F.Supp.2d 341, 344 (E.D.N.Y.2003)) (additional internal quotations omitted)).

In short, plaintiff has submitted evidence sufficient to create a genuine dispute of material fact with respect to whether there was probable cause to arrest and prosecute her for disorderly conduct.[13] Accordingly, the Court denies summary judgment to defendants on the false arrest and false imprisonment claims under Section 1983 and state law, and on the related state law claim for municipal liability under a theory of *respondeat superior.*

■ Nevertheless, summary judgment on the malicious prosecution claims is warranted on an independent ground. Specifically, there is no evidence that plaintiff obtained a favorable termination of the criminal proceeding for disorderly conduct, because the charge was dismissed due to defective charging information.[14] *See Martinez v. City of Schenectady,* 97 N.Y.2d 78, 84–85, 735 N.Y.S.2d 868, 761 N.E.2d 560 (N.Y.2001) ("A criminal defendant has not obtained a favorable termination of a criminal proceeding where the outcome is inconsistent with the innocence of the accused. While a plaintiff need not prove actual innocence in order to satisfy the favorable termination prong of a malicious prosecution action, the absence of a conviction is not itself a favorable termination. A termination is not favorable, for example, where a prosecution ends because of a compromise with the accused, or where the accused's own misconduct frustrates the prosecution's ability to proceed with the case. Plaintiff's felony conviction was reversed not because of her lack of culpability—indeed, her guilt was proven

13. Given these factual disputes, Officer Masi is not entitled to summary judgment based upon a defense of qualified immunity. Specifically, if plaintiff's version is fully credited—namely, that she was not congregating with at least two others, she was causing no annoyance, and was trying to leave at the time of her arrest—then it would not be objectively reasonable under the doctrine of qualified immunity for the defendants to believe they had probable cause, or even arguable probable cause, to arrest plaintiff for disorderly conduct. *See, e.g., Burns v. Fumarola,* No. 1:12–CV–1432 (LEK/CFH), 2014 WL 4455043, at *5 (N.D.N.Y. Sept. 10, 2014) (factual disputes precluded summary judgment on qualified immunity with respect to arrest for disorderly conduct); *Milfort v. Prevete,* 922 F.Supp.2d 398, 405–407 (E.D.N.Y.2013) (disputed facts precluded summary judgment on qualified immunity defense where defendants claimed they had probable cause to arrest plaintiff for disorderly conduct because plaintiff's behavior in courthouse lobby created unreasonable noise, obstructed flow of pedestrian traffic, and caused a commotion, but plaintiff claimed his arrest was unprovoked).

14. In the opposition papers, plaintiff did not dispute that the charge was dismissed due to a defective charging information.

beyond a reasonable doubt—but because the evidence that formed the basis for her conviction was obtained pursuant to a faulty search warrant." (internal citations omitted)); *Drake v. State of New York*, 126 Misc.2d 309, 482 N.Y.S.2d 208, 210 (N.Y.Ct.Cl.1984) ("[T]he mere technical dismissal of the indictment against Mr. Drake based on the prosecution's failure to procure speedy sentencing does not supply the requisite condition of a termination of the proceeding in favor of the accused so as to permit a malicious prosecution claim to be maintained." (internal quotation marks and citation omitted)).

■ It is well settled that a dismissal for facial insufficiency is inadequate to constitute a favorable termination for the purposes of plaintiff's malicious prosecution claim. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir.1999) ("The charge subsequently was dismissed for facial insufficiency pursuant to section 170.30 of New York's Criminal Procedure Law. Because this was not a decision on the merits, an essential element of a cause of action for malicious prosecution, the district court did not err in dismissing Breen's claim of malicious prosecution."); *Bradley v. Vill. of Greenwood Lake*, 376 F.Supp.2d 528, 534 (S.D.N.Y.2005) ("In this case, the proceeding against Plaintiff for resisting arrest and obstructing governmental administration was not terminated in his favor because ... the charges were dismissed due to insufficiency of the accusatory instruments."); *Mack v. Town of Wallkill*, 253 F.Supp.2d 552, 562 (S.D.N.Y.2003) ("Having dismissed the action on procedural grounds, Justice Freehill never reach [sic] the merits of the case, and plaintiff's innocence was not established by the dismissal. Therefore, for the purposes of maintaining an action for malicious prosecution, plaintiff's underlying criminal action cannot be said to have terminated in

her favor." (citing *MacFawn v. Kresler*, 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (N.Y.1996) for the proposition that an "information dismissed on procedural grounds, namely that facts alleged by the People were not legally sufficient to support the charge, did not terminate favorably to [defendant] and as such, [defendant] failed to state cause of action for malicious prosecution")); *Neal v. Fitzpatrick*, 250 F.Supp.2d 153, 155 (E.D.N.Y. 2003) ("In fact, the New York Court of Appeals in Smith–Hunter explicitly affirmed [the holding in *MacFawn*, 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359] that a termination for facial insufficiency does not constitute a favorable termination."). Accordingly, because plaintiff cannot demonstrate that the proceeding was terminated in her favor, the Court grants the Village Defendants' motion for summary judgment on the malicious prosecution claim under Section 1983 and state law.

### 4. Failure to Protect, Cruel and Unusual Punishment, and State Law Negligence and Emotional Distress Claims

■ Defendants move for summary judgment on the "failure to protect" and cruel and unusual punishment claims, arguing that there is no evidence that they harmed or otherwise disregarded plaintiff's rights while she was in custody. Specifically, plaintiff claims that (1) defendants maliciously or with deliberate indifference failed to protect plaintiff from violence while in their custody, and failed to secure medical treatment for her injuries and ailments (Am. Compl. ¶ 64); and (2) deprived plaintiff of her Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment, and engaged in a cover-up to conceal their wrongdoing (*id.* ¶¶ 70–71). Plaintiff's pendent claim of gross negligence, negligence, and intentional and negligent infliction of emotional

distress mirrors these allegations. (*See id.* ¶¶ 74–75.) Plaintiff does not address the Village Defendants' arguments in her opposition, and the Court deems these claims abandoned. *Maher v. Alliance Mortg. Banking Corp.,* 650 F.Supp.2d 249, 267–68 (E.D.N.Y.2009). In any event, the Court concludes that these claims also cannot survive summary judgment on their merits because plaintiff points to no evidence in the record to support those claims.

### a. Legal Standard

▆▆▆▆ With respect to plaintiff's "failure to protect" claim, although "prison officials have a duty to protect inmates from violence ... at the hands of other inmates," *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (per curiam), an inmate's constitutional right to protection is only violated where the failure is "sufficiently serious" and the official has acted with "deliberate indifference." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. Whether a failure was "sufficiently serious" is an objective inquiry; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* (citation omitted). The second prong, "deliberate indifference," requires the plaintiff to allege that the defendants knew of and disregarded a substantial risk of serious harm to the plaintiff. *Id.* at 835–36, 114 S.Ct. 1970; *Hayes v. N.Y.C. Dep't of Corr.,* 84 F.3d 614, 620–21 (2d Cir.1996).

▆▆▆▆ With respect to the cruel and unusual punishment claims, first, "[i]ncarceration does not constitute cruel and unusual punishment. Rather, after incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment." *Gill v. Stella,* 845 F.Supp. 94, 102 (E.D.N.Y.1994) (quoting *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). Second, to the extent plaintiff's cruel and unusual punishment claim is one for deliberate indifference, "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir.2009). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment," and therefore, "states a cause of action under § 1983." *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citation and internal quotation marks omitted). As with a failure to protect claim, deliberate indifference exists "when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) (quoting *Farmer,* 511 U.S. at 847, 114 S.Ct. 1970). Where an official exhibits deliberate indifference to a known injury, she may be held liable under Section 1983. *See Ortiz v. Goord,* 276 Fed.Appx. 97, 98 (2d Cir. 2008).

### b. Analysis

▆▆▆▆ In addition to the fact that plaintiff did not address these claims in her opposition papers, summary judgment is warranted because there is no evidence in the record that plaintiff was injured while in police custody by any other inmate, that the police were deliberately indifferent to a substantial risk of harm to her or any significant medical issues, or that plaintiff was deprived of the minimal

civilized measure of life's necessities. Accordingly, the Court grants summary judgment to the Village Defendants on the § 1983 failure to protect and cruel and unusual punishment claims, and on the state law claims for negligence and infliction of emotional distress.[15]

### 5. Supervisory Liability and Failure to Intercede

Plaintiff also brings a claim under Section 1983 for supervisory liability and failure to intercede, alleging that defendants failed to prevent the use of excessive force. Plaintiff does not address this claim in her opposition, and the Court deems it abandoned. *Maher*, 650 F.Supp.2d at 267–68. In any event, the Court concludes that this claim also cannot survive summary judgment on its merits.

#### a. Legal Standard

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior.*" *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003). Supervisor liability can be shown in one or more of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citation omitted).

#### b. Analysis

As the Village Defendants argue, plaintiff has failed to identify which supervisor was required to supervise Masi or intercede in his actions at Gusto on December 3. In addition, Vicino is not a party to this action. Finally, Masi is alleged to have made the unlawful arrest and used the unreasonable force, so there is no basis to conclude that he is liable for failing "to intercede to prevent the constitutional violations of other officers where the officer had reason to know such a violation was occurring and had a realistic opportunity to intercede." *Blake v. Race*, 487 F.Supp.2d 187, 207 (E.D.N.Y.2007); *see Provost v. City of Newburgh*, 262 F.3d 146, 168 (2d Cir.2001) (" 'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.' " (quoting

---

**15.** This Court set forth the standards for negligent and intentional infliction of emotional distress in *Alexiadis v. N.Y. College of Health Professions*, 891 F.Supp.2d 418, 436–37 (E.D.N.Y.2012). Here, with respect to the negligent infliction of emotional distress, plaintiff has pointed to no evidence in the record, nor has the Court found any, from which plaintiff could establish that defendants' conduct was " 'so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.' " *Id.* at 436 (quoting *Wilson v. City of New York*, 294 A.D.2d 290, 743 N.Y.S.2d 30, 34 (2002)). Similarly, there is no evidence to support a rational finding by a jury as to an intentional infliction of emotional distress claim. *See Alexiadis*, 891 F.Supp.2d at 436. Accordingly, the Court grants the Village Defendants' motion for summary judgment on the infliction of emotional distress claims on this independent ground.

*Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994))); *Curley v. Vill. of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be."). Accordingly, the Court grants summary judgment to the Village Defendants on the supervisory liability and failure to intercede claim under Section 1983.

### 6. *Monell* Liability

The Village Defendants move for summary judgment on the *Monell* claim, which plaintiff argues survives because "a multitude of police brutality cases brought against the Village of Hempstead" demonstrate a persistent failure to discipline officers who violate persons' civil rights. (Opp'n, at 6.) The Court concludes that this claim cannot survive summary judgment.

#### a. Legal Standard

■ A municipal entity may be held liable under Section 1983 where the plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasizing that the municipal policy must be the "moving force of the constitutional violation"). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (citing *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870 (2d Cir.1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco,* 971 F.2d at 870–71 (citing *Monell,* 436 U.S. at 691, 98 S.Ct.

2018) (internal quotation marks omitted). In addition, a policy, custom, or practice of the entity may be inferred where " 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.' " *Patterson,* 375 F.3d at 226 (quoting *Kern,* 93 F.3d at 44). A municipal entity, however, may be held liable only where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *see also Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

#### b. Analysis

■ As a preliminary matter, the only surviving constitutional claims against Masi under Section 1983 are the excessive force and false arrest/imprisonment claims. Thus, the Court need not address the Village's liability under *Monell* with respect to the other Section 1983 claims. *See Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Bernshtein v. City of N.Y.,* 496 Fed.Appx. 140, 144 (2d Cir.2012) ("To the extent that Bernshtein cannot establish Brockmann violated her constitutional rights (through false arrest, malicious prosecution, or excessive detention), the City of New York likewise is not liable on the *Monell* claims asserting those violations." (citations omit-

ted)).[16]

With respect to the surviving claims, the Village Defendants argue that plaintiff has proffered no evidence from which a reasonable jury could find a connection between any Village policies and/or customs and any harm to plaintiff. The Court agrees. Plaintiff has pointed to no policy regarding force during arrests that a rational jury could conclude is the underlying cause of any harm to plaintiff. Plaintiff also has not pointed to any policy regarding arrests for disorderly conduct and arrests involving civil disputes. Instead, plaintiff relies on the existence of a 16–year old case against the Village regarding the death of a Paul Maxwell to argue that there has been a pattern of discrimination and a violation of civil rights on the part of the Village Defendants. (*See* Liotti Decl. ¶ 3 & n. 1.) Although plaintiff's counsel has personal knowledge of that lawsuit because he represented the family and the estate of the decedent, the mere fact that a lawsuit was filed (and settled) is irrelevant without any evidence that the municipality ignored such complaints in the future. Therefore, the Court sees no indication the Village was deliberately indifferent to any potential problem of excessive force or that the Village actually has a historical problem of its police officers using unconstitutionally excessive force in the performance of their duties. *See, e.g., Ostroski*, 443 F.Supp.2d 325 (collecting cases and explaining that the mere fact that a lawsuit has been filed against the defendant municipality in the past is not a basis for municipal liability). In short, plaintiff's reference to one lawsuit against the Village does not provide a basis to conclude that the alleged unconstitutional acts by Masi were connected to any policy, custom, or practice beyond mere speculation and conjecture.

Accordingly, the Court grants summary judgment to the Village Defendants on the *Monell* claim.

### 7. Prima Facie Tort

Plaintiff's prima facie tort claim alleges that Masi inflicted harm on plaintiff "without justification, out of disinterested malevolence." (Am. Compl. ¶ 96.) The Village Defendants move for summary judgment on this claim. Plaintiff does not address the Village Defendants' arguments in her opposition, and the Court deems this claim abandoned. *Maher*, 650 F.Supp.2d at 267–68. In any event, this claim also cannot survive summary judgment on its merits, because prima facie tort is not an available remedy because plaintiff's assault and battery and false arrest/imprisonment claims survive summary judgment *See Siotkas v. LabOne, Inc.*, 594 F.Supp.2d 259, 276 (E.D.N.Y. 2009) ("Because, as discussed above, the facts alleged in plaintiffs' complaints give rise to traditional common-law tort claims, plaintiffs' causes of action for intentional and prima facie tort should be dismissed."). Accordingly, the Court grants summary judgment to the Village Defendants on the prima facie tort claim.

### B. Request for Fees

The Non–Village Defendants request that the Court award attorneys' fees because the Section 1983 action against them was frivolous, unreasonable, and groundless. They argue that plaintiff's counsel inserted fictional facts into the complaint to ensure that it would survive a

---

**16.** Even assuming *arguendo* that the absence of an underlying constitutional violation did not preclude a *Monell* claim against the Village on those claims, the Court concludes that the Village would still be entitled to summary judgment because of the absence of any evidence of an unconstitutional policy, practice, or custom by the County, or a failure to supervise or train, as it relates to those issues here.

motion to dismiss. As set forth below, in its discretion, the Court concludes that there is an insufficient basis to award attorneys' fees.

 Attorney's fees may be awarded to a successful defendant in a civil rights action pursuant to 42 U.S.C. § 1988 where the underlying claim is "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir.1994) (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986)). "Though a showing that the plaintiff acted in bad faith will further support an award under section 1988, the determination generally turns on whether the claim itself is clearly meritless." *Id.* "A claim is frivolous where it lacks an arguable basis either in law or in fact." *Shakur v. Selsky,* 391 F.3d 106, 113 (2d Cir.2004) (internal quotation marks omitted). The Second Circuit also has cautioned that

> [c]ertain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous.... For example, a court cannot properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim. Nor may a claim properly be deemed groundless where the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law.

*LeBlanc–Sternberg v. Fletcher,* 143 F.3d 765, 770–71 (1998) (internal citations omitted).

Although plaintiff's allegations of conspiracy have not been borne out with respect to the Non–Village defendants, there was a good faith basis for her to' plead a conspiracy charge based on Gomez's alleged statements regarding her influence over the Hempstead Police Department and her ability to call a police officer and have plaintiff arrested. Further, plaintiff attempted to adduce evidence in her opposition to summary judgment that there was a conspiracy between defendants. Moreover, there is an insufficient basis for the Court to conclude that plaintiff's counsel knowingly inserted fictitious facts into the Amended Complaint in an attempt to overcome a motion to dismiss. In short, the Court cannot conclude that plaintiff's allegations were without substance from the start. *Compare Am. Fed'n of State, Cnty. & Mun. Emps. v. Cnty. of Nassau,* 96 F.3d 644, 652 (2d Cir.1996) (reversing attorneys' fees award in favor of defendant where district court premised finding of frivolousness in part on judge's conclusion that plaintiff's evidence was flawed, a conclusion only possible "Based on determinations ... the district court arrived at with the benefit of effective cross-examination and the counterweight of the [defendant's] experts and studies"), *with Ehrlich v. Inc. Vill. of Sea Cliff,* 389 Fed.Appx. 59, 62 (2d Cir.2010) (finding that district court did not abuse discretion in awarding attorneys' fees even though all claims went to trial, because court ultimately entered judgment as a matter of law and found that not only was there no evidence whatsoever of unlawful conduct by the moving defendants, but also that there was no reference at trial to most of those defendants and that allegations had been without substance from the start). Accordingly, the Court, in its discretion, declines to award attorneys' fees.

### C. Request for Sanctions

In the sur-reply, counsel for plaintiff requests that the Court impose sanctions on counsel for the Non–Village Defendants, and issue a protective order precluding the use of the transcript of the

**386**

deposition of plaintiff conducted by Mr. Hogan in any future proceedings. The request is denied. First, the Court has granted summary judgment to the Non–Village Defendants on the claims against them. Thus, they no longer are parties to this action. The Court also has not relied on counsel's questions themselves in the foregoing analysis. Second, there is no basis to preclude the Village Defendants from introducing plaintiff's deposition testimony at trial, if circumstances warrant. Such preclusion could needlessly prejudice the Village Defendants. Third, the request for sanctions is procedurally improper, because (1) it does not involve representations to the Court, *see* Fed.R.Civ.P. 11(b); and (2) a motion for sanctions must be made separately from any other motion, must be served under Rule 5, and must be presented to the Court following a safe haven period, *see* Fed.R.Civ.P. 11(c)(2). Finally, in its discretion, the Court does not believe there is any basis for sanctions.

### IV. CONCLUSION

For the foregoing reasons, the Court grants the Non–Village Defendants' motion for summary judgment in its entirety, but denies their request for attorneys' fees. The Court grants the Village Defendants' motion, except with respect to (1) the excessive force and false arrest/imprisonment claims under Section 1983 against Officer Masi, (2) the assault and battery claim under state law, as well as the false arrest/imprisonment claims under state law, against Officer Masi and against the Village (under a theory of *respondeat superior* liability).

SO ORDERED.